## COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. _CA 20-616_
(CLERK'S OFFICE USE ONLY)

Winchester ............................................ Circuit Court

JAMES MONTGOMERY ..... v./In re: ..... ASHWORTH BROS., INC.
PLAINTIFF(S)                                    DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
   [ ] Monetary Damages
   [ ] No Monetary Damages
[ ] Counterclaim
   [ ] Monetary Damages
   [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
   [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[ ] Other General Tort Liability

**ADMINISTRATIVE LAW**
[ ] Appeal/Judicial Review of Decision of (select one)
   [ ] ABC Board
   [ ] Board of Zoning
   [ ] Compensation Board
   [ ] DMV License Suspension
   [ ] Employee Grievance Decision
   [ ] Employment Commission
   [ ] Local Government
   [ ] Marine Resources Commission
   [ ] School Board
   [ ] Voter Registration
   [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
[ ] Adoption
   [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
   [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
   [ ] Complaint – Contested*
   [ ] Complaint – Uncontested*
   [ ] Counterclaim/Responsive Pleading
   [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
   [ ] Separate Maintenance Counterclaim

**WRITS**
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
   [ ] Guardian/Conservator
   [ ] Standby Guardian/Conservator
   [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
   [ ] Impress/Declare/Create
   [ ] Reformation
[ ] Will (select one)
   [ ] Construe
   [ ] Contested

**MISCELLANEOUS**
[ ] Amend Death Certificate
[ ] Appointment (select one)
   [ ] Church Trustee
   [ ] Conservator of Peace
   [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
   [ ] Reinstatement pursuant to § 46.2-427
   [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
   [ ] Correct Erroneous State/Local
   [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[x] Other (please specify)
   Va. Code 40.1-51.2:1, FMLA, ADA

[x] Damages in the amount of $ 600,000.00 ........................ are claimed.

10/19/2020
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR   [x] PLAINTIFF [ ] DEFENDANT

Timothy E. Cupp, VSB No. 23017, Shelley Cupp Schulte, P.C.
PRINT NAME

1951-D Evelyn Byrd Avenue
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

Harrisonburg, Virginia 22801

cupp@scs-work.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the a...

**EXHIBIT**
**A**

**V I R G I N I A:**
   **IN THE CIRCUIT COURT FOR CITY OF WINCHESTER**

| | |
|---|---|
| **JAMES MONTGOMERY,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| **ASHWORTH BROS., INC.,** | ) |
| | ) **Case No.** _____ 20-616 |
| **a Delaware Corporation,** | ) |
| | ) |
| **Serve:  CT Corporation System** | ) |
| **4701 Cox Rd., Ste 285** | ) |
| **Glen Allen, VA 23060** | ) |
| *Defendant.* | ) |

## COMPLAINT

The Plaintiff, James Montgomery, by counsel, for his Complaint against Defendant, Ashworth Bros., Inc., alleges as follows:

### NATURE OF CLAIMS

1.      The Plaintiff, James Montgomery ("Plaintiff"), was employed by the Defendant, Ashworth Bros., Inc. ("Defendant") as a Sprocket Department employee until the unlawful termination of his employment on March 21, 2019.  Plaintiff brings this action for legal and equitable relief to correct and remedy the unlawful, discriminatory, and retaliatory employment practices by Defendant during the course and in the termination of his employment.  Plaintiff brings this action to make him whole and compensate him for Defendant's violations of Va. Code Ann. § 40.1-51.2:1, *et seq.,* the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (the "FMLA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA").

1

2.     On March 19, 2019, Plaintiff attended an Ashworth Bros. company meeting for participants of Ashworth International, Inc.'s Employee Stock Ownership Plan ("ESOP"), who were considered Beneficial Owners of the company. At the meeting, Plaintiff expressed his concerns regarding the safety of the employees given a marked increase he had observed in workplace accidents, which Plaintiff attributed to a new management system focusing rigidly on efficiency. Shortly before the meeting date, Plaintiff had requested accommodations for his disabilities and had provided his doctor's note requesting the accommodation to Defendant Ashworth.  Plaintiff was summarily suspended and walked out of the plant on March 19, 2019.  He was advised by telephone on March 21, 2019 that he was terminated from his job.

3.     Plaintiff is an individual with a disability protected by the ADA and had serious health conditions protected under the FMLA, and asserts claims for discrimination and retaliation under Virginia's whistleblower law and under the ADA and FMLA arising from the termination of his employment and, additionally under the ADA, for the failure to accommodate his disabilities.

JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to Virginia Code § § 17.1-513 and 40.1-51.2:2. Plaintiff's demand for declaratory relief is authorized by Va. Code § 8.01-184.  Plaintiff's claims under the ADA and the FMLA are proper because this court has concurrent jurisdiction of those claims under *Yellow Freight Syst. V. Donnelly*, 494 U.S. 820 (1990).

5.     This Court is an appropriate venue for this cause of action pursuant to Virginia Code Ann. § 8.01-262 because the claims arose in the City of Winchester.

PARTIES

6.     Plaintiff is a U.S. citizen and resident of Boyce, Clarke County, Virginia.

7.     Defendant is a corporation organized and existing under the laws of the state of Delaware with a principal place of business at 222 Milliken Boulevard, Suite 7, Fall River, Massachusetts 02721.   Defendant is engaged in the business of manufacturing, distributing, and selling conveyance systems, conveyor belts, and related equipment. Defendant operates a plant facility in Winchester, Virginia at which Plaintiff worked from 1988 until March 21, 2019.

ADMINISTRATIVE PROCEEDINGS AS TO VIRGINIA AND ADA CLAIMS

8.     Plaintiff timely and properly filed a whistleblower discrimination and retaliation complaint in May 2019 with the Virginia Department of Labor and Industry VOSH Program Whistleblower Protection office with regard to his claim under Va. Code Ann. § 40.1-51.2:2, *et seq.* for Defendant's violation of Va. Code Ann. § 40.1-51.2:1, *et seq.* The complaint was dismissed by letter of September 8, 2020 attached marked Exhibit 1, giving Plaintiff the right to pursue this action under Virginia state law.

9.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging the discrimination under the ADA complained of in this Complaint on December 31, 2019, a true copy of which is attached hereto and marked Exhibit 2.  The EEOC issued Plaintiff a Notice of Right to Sue (Issued on Request) on July 21, 2020.  See attached Exhibit 3.

10.    On July 28, 2020, Plaintiff received the Notice of Right to Sue (Issued on Request).

3

11.    All administrative conditions precedent to the filing of the Virginia state law whistleblower claim and the ADA claims have been performed or have occurred.

## FACTS

12.    Plaintiff is a 60-year-old male. He is a citizen of the United States and a resident of Boyce, Clarke County, Virginia.

13.    At all relevant times, Plaintiff was an "eligible" employee within the meaning of the FMLA pursuant to 29 U.S.C. § 2611(a). He began his employment with Defendant in 1988 and had worked for at least 1,250 hours during each 12 month period applicable to his FMLA claims. Additionally, at all relevant times, Plaintiff was a "qualified individual" within the meaning of the ADA pursuant to 42 U.S.C. § 12111(8).

14.    Defendant maintains a place of business in Winchester, Virginia where it transacts its business. At all times relevant to the matters alleged herein, Defendant has employed more than 80 employees at its Winchester facility alone.

15.    At all relevant times, Defendant was and is an employer engaged in an industry affecting commerce with 15 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Further, for purposes of coverage of Defendant under the FMLA as an employer and eligibility of Plaintiff as an employee, Defendant employed more than 50 employees at its worksite in Winchester, Virginia, where Plaintiff worked.

16.    At all relevant times, Defendant was an "employer" within the meaning and subject to the provisions of the ADA pursuant to 42 U.S.C. § 12111(5)(A).

4

17.    At all times relevant to the matters alleged herein, Defendant's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of Defendant.

18.    Plaintiff began working for Defendant in 1988 in the flatwire department. After approximately five years, Plaintiff bid for and was accepted to the sprocket department where he worked until the unlawful termination of his employment described herein.

19.    Over the years, Plaintiff received various advancements in his pay and received a promotion to the position of sprocket department lead person.

20.    Plaintiff performed his duties in a competent and satisfactory manner during his employment with Defendant and met Defendant's legitimate expectations.

21.    At all times relevant to the matters alleged herein, Plaintiff was able to and did perform the essential functions of his job with or without reasonable accommodation.

22.    Plaintiff suffers from several chronic serious health conditions, which also are physical impairments that substantially limit his major life activities, including walking, stooping, standing, bending, crawling, kneeling, and his musculoskeletal system and immune system, among other things, and constitute disabilities under the ADA. Plaintiff suffers from arthritis and rheumatoid arthritis, chronic pain (including low back pain), and has had bilateral hip replacement surgery, knee replacement surgery, and other surgeries in the past. Especially during the latter years of his employment with Defendant, some of Plaintiff's health conditions were obvious in that he walked with a distinctive and noticeable limp.

23.    Defendant was aware of Plaintiff's chronic serious health conditions and

5

regarded Plaintiff as having substantially limiting physical impairments. Moreover, Plaintiff has a record of physical impairments that substantially limit his major life activities.

24.     In addition to constituting disabilities, Plaintiff's health conditions were chronic serious health conditions for purposes of the protections provided by the FMLA.

25.     In May or June of 2018, Plaintiff applied for and was approved for intermittent leave under the FMLA due to his chronic serious health conditions, which caused multiple joint pain and limited range of motion with joint and muscle tenderness. He was referred to physical therapy by his doctor. Despite his conditions, he continued to perform his job well and was able to use available accumulated leave under Defendant's policies for days he was required to be off work due to his serious health conditions and disabilities.

26.     Plaintiff's chronic serious health conditions and need for leave did not require him to miss significant amounts of time in early 2019, and he always kept the Defendant aware of his conditions and need for leave.

27.     In early March 2019, Plaintiff developed increasing numbness and tingling in his arm radiating to his hand. He told Judy Mills, Defendant's human resources representative, about his symptoms and his need for a doctor's appointment. His doctor referred him for a nerve conduction test, which was scheduled for April 2019. Plaintiff was subsequently diagnosed with carpal tunnel syndrome after the unlawful termination of his employment, together with other conditions that were not then identified.

28.     Also, Defendant had locked the bathroom located in close proximity to Plaintiff's work station, which caused Plaintiff to have to walk a great distance (a total of

about 200 yards round trip) just to use the bathroom facilities. Defendant also closed off access through a door near the employee parking lot, requiring another long walk for Plaintiff at the beginning and end of the work day. These distances made it very difficult for Plaintiff given his significant hip, knee, and back pain. Plaintiff requested that he be allowed to use the bathroom facilities and the door close to his work station. This request was a request for a reasonable accommodation.

29.     On March 11, 2019, Plaintiff's primary care doctor gave him a note, which Plaintiff presented to Defendant as further support for his request for reasonable accommodations. Plaintiff's doctor restricted him to limited walking and imposed lifting and carrying restrictions as reasonable accommodations for his disabilities. Plaintiff was able to perform the essential functions of his job in the sprocket department with these restrictions.

30.     Plaintiff provided the restrictions from his doctor to Defendant, but Defendant refused to open the bathroom close to Plaintiff's work station. Defendant contended that the bathroom was often dirty, and that was the reason it remained closed. Defendant refused to give Plaintiff a key to the bathroom which would have allowed Plaintiff to avoid the long walk over concrete floors whenever he needed to use the facilities. Within a matter of days after Plaintiff's employment was terminated, Defendant reopened that same bathroom for use by the workforce.

31.     Defendant allowed at least one female employee access to and from the parking lot through the door near that lot when it denied such access to Plaintiff. Only after Plaintiff advised Defendant that he had become aware that the Defendant was allowing such access to the female employee, and thus was treating him differently, did Defendant

allow Plaintiff to use that door.

32. As an employee of Defendant, Plaintiff was a participant in the Ashworth International, Inc. Employee Stock Ownership Plan ("ESOP"). The ESOP is a tax-deferred retirement plan and part of the benefits provided to Plaintiff in exchange for his labor. Plaintiff became a beneficial owner of interests in Ashworth International, Inc. due to his participation in the ESOP. According to the Summary Plan Description of the ESOP, participants in the ESOP, including Plaintiff, "have a beneficial ownership interest in the vested value of the stock allocated to [their] account. . . . The value of stock in [their] account is based on the financial results of Ashworth International, Inc.; and [they are] part of a team whose actions and decision affect these financial results and the future of the company."

33. Defendant periodically held informational meetings at which Defendant's managers gave information about the status of the company to the "Beneficial Owners" under the ESOP. These meetings were called "Beneficial Owners' Meetings." Beneficial Owners were allowed to ask questions after management made its presentation at these meetings.

34. On March 11, 2019, Plaintiff was notified by Defendant's Human Resources Manager, Penny Mathias, that there would be a Quarterly Beneficial Owners' Meeting for Plaintiff's group to be held on March 19, 2019 at which the Beneficial Owners would receive an update on the company's performance for 2018.

35. On March 19, 2019, Plaintiff attended the Beneficial Owners' Meeting and was prepared to address certain issues, including concerns he had about safety in the plant. He had become concerned because work accidents had increased approximately three-fold

8

since new management had taken over a couple of years prior. Plaintiff attributed this increase in accidents to a new system focused rigidly on efficiency, which in his observation was causing employees to rush or jump to complete tasks, resulting in preventable injuries that were costly to the company and that caused potentially serious injuries to the workers. Defendant referred to this rigid focus on efficiency as "KPIs" which Plaintiff believes to refer to Key Performance Indicators.

36.    During the March 19, 2019 Beneficial Owners' Meeting, Defendant's management discussed that the company had lost over $1,000,000 due to the amount of warranty work, scrap, and rework it had to perform. This left the company unable to accept expedite work from customers with a loss of over another $1,000,000 attributed to that. Defendant's management also noted nine reportable accidents and many other non-reportable accidents.

37.    When the management presentation at the March 19, 2019 Beneficial Owners' Meeting concluded, Defendant's president, Vinnie Moretti opened the floor for questions. A female employee raised a question and then left the meeting when she was treated in a dismissive manner by Dexter James, manufacturing manager. Plaintiff then raised his hand and was recognized. Plaintiff gave copies of one of Defendant's policies, on which he had highlighted items, including language about safety, to Judy Mills, Human Resources representative, and asked her to distribute the copies to Dexter James, Vinnie Moretti, and Paul Nunes, Vice President. Plaintiff then observed Ms. Mills give a copy of the policy to Mr. James.

38.    After asking Ms. Mills to distribute copies of the highlighted policy to Mr. James, Mr. Moretti, and Mr. Nunes at the March 19, 2019 Beneficial Owners' Meeting,

9

Plaintiff addressed performance of the company and the high number of injuries in the plant since management had imposed requirements to adhere to the KPIs. Plaintiff expressed his concern that the strict requirements for efficiency were causing employees to rush, resulting in a dramatic increase in injuries and workers compensation claims. Plaintiff stated to Mr. James that after Defendant started the KPI system, and the focus on adhering to such numbers, Defendant started losing money and the employees on the floor started having more accidents.

39.     Mr. James responded to Plaintiff's questions and comments in a dismissive manner. Mr. James flatly stated that Plaintiff was wrong. Plaintiff replied that Mr. James should look at the time-line for when Defendant started the KPI's in relation to the increase in injuries.

40.     After Mr. James was again dismissive of Plaintiff, Plaintiff stated that after putting in place the KPI's, rework, warranty work, material scrap, and injuries had more than tripled.

41.     Mr. James again dismissed Plaintiff. Plaintiff then stated that Defendant was holding its efficiencies in front of the employees' faces and having them jump through hoops and over boxes, and said to Mr. James, "Dexter, these people on the floor are getting hurt," referring to the employees. To emphasize the point, Plaintiff said words to the effect of: "Dexter, you try driving home each day in one-quarter of the normal time that it takes you and see if you have an accident." Mr. James responded, "No, I wouldn't."

42.     During the time Plaintiff was attempting to ask a question or make a comment at the March 19, 2019 Beneficial Owners' Meeting, Mr. James would repeatedly speak over him to drown out his question.

43.     During the March 19, 2019 Beneficial Owners' Meeting, Plaintiff also had asked questions about what appeared to him to be poor performance by Defendant in comparison to other years and that the same issue that played into the safety issues was causing underperformance financially.

44.     After the March 19, 2019 Beneficial Owners' Meeting ended, Plaintiff approached Defendant's president, Mr. Moretti, and Paul Nunes. Plaintiff asked them for a meeting to discuss further the issues Plaintiff had raised with them. They agreed, but no meeting was ever scheduled.

45.     Plaintiff conducted himself in a professional manner at all times during the March 19, 2019 Beneficial Owners' Meeting. He did not storm out as did the other employee who had been treated in a dismissive fashion. He was not belligerent, hostile, malicious, or inappropriate in any respect. He simply sought answers and communicated his great concern for the health and safety risk caused by the requirement of the strict adherence to the excessive KPI standards.

46.     On March 19, 2019 after the conclusion of the Beneficial Owners meeting, Plaintiff returned to work in the sprocket department. Shortly after that, Judy Mills came to his work area and escorted him to the Human Resources department, where he was met by Mr. James and Ms. Mathias. Plaintiff was told he was suspended and that he could not speak with any other of Defendant's employees about anything.

47.     On March 21, 2019, Plaintiff was called on the telephone by Ms. Mathias, Defendant's Human Resources representative, and was told he was being terminated from his job.

48.     One to two weeks after Ms. Mathias's March 21, 2019 telephone call

informing Plaintiff of his termination, Plaintiff received a letter dated March 22, 2019 signed by Ms. Mathias as Defendant's Human Resources Manager, stating that Plaintiff's employment was "terminated effective March 20, 2019, for conduct unbecoming an Ashworth lead person."

49.     The reasons given for the suspension and termination of Plaintiff's employment, namely that he had acted negatively towards management given his lead position, were false and pretextual.

50.     Throughout his more than 30 years of employment with Defendant, Plaintiff had only had good performance reviews, with no write-ups, performance improvement plans, or any type of warnings or demerits about his performance until the pretextual assertions Defendant made about the Beneficial Owners Meeting. His most recent review put him at 97%, which is a very good review for Defendant to give.

51.     Plaintiff had served as the sprocket lead person until after Dexter James began working as manufacturing manager in approximately 2017. At that point, Defendant began removing experienced and older employees from the workforce, including the Sprocket Department, increasing the work Plaintiff was required to perform. Defendant then did not treat Plaintiff as a lead person, although he effectively handled the Sprocket Department by himself.

Count One: Violations of Va. Code Ann. § 40.1-51.2:1, *et seq.*

52.     The foregoing allegations are incorporated as if re-alleged herein.

53.     Va. Code Ann. § 40.1-51.2:1 makes it unlawful for an employer to discharge or discriminate against an employee because the employee has filed a safety or health complaint or has testified or otherwise acted to exercise rights under the safety and

health provisions of that title for themselves or others.

54.    On March 19, 2019, Plaintiff in good faith raised safety and health concerns over Defendant's policies and practices which exposed its employees to increased injuries and risks of injury in the workplace at the Beneficial Owners meeting. Plaintiff was speaking on behalf and in the interest of himself and his fellow co-workers in raising these concerns.

55.    Defendant unlawfully terminated Plaintiff because he engaged in conduct protected by Va. Code Ann. § 40.1-51.2:1, including his raising safety and health concerns at the Beneficial Owners Meeting on March 19, 2019. He is entitled to the remedies for such discrimination and/or retaliation set forth within Va. Code Ann. §§ 40.1-51.2:2.

56.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury for which he is entitled to appropriate relief, including but not limited to back pay and benefits, loss of the benefit of his bargain, the loss of the value of his efforts, and such other damages as are the natural and direct result of Defendant's actions in the amount of One Hundred Fifty Thousand and 00/100 Dollars ($150,000). In addition, he is entitled to injunctive and declaratory relief, including reinstatement to the same position he held before the termination, but if such relief is infeasible or inappropriate due to the false statements and hostile attitude taken by Defendant, or if Defendant has replaced Plaintiff in his position, he is entitled to an award of front pay and benefits to be determined by the Court in an amount sufficient to restore him to the economic position he would have held but for Defendant's unlawful conduct. Plaintiff also is entitled to interest on all amounts awarded at the rate of 8% per annum and litigation expenses, including his costs, attorney's fees, and expert witness fees pursuant to

13

Va. Code Ann. § 40.1-51.2.2 in order to insure appropriate relief.

<u>COUNT TWO-Violations of the FMLA</u>

57.     Plaintiff incorporates by reference and realleges Paragraphs 1-51 as if fully set forth here.

58.     Plaintiff's health conditions constituted chronic serious health conditions within the meaning of the FMLA and/or its implementing regulations, of which Defendant was well aware.

59.     At all relevant times, Plaintiff suffered from chronic serious health conditions, which were treated with medications and surgery and required more than two visits per year to see a healthcare provider for the conditions. Plaintiff's chronic serious health conditions and all of his related need for absences or periods of absence were protected under the FMLA.

60.     Plaintiff had not exhausted his FMLA leave entitlement as of any time pertinent to the matters alleged herein.

61.     Plaintiff was entitled to and took short periods of leave to which he was entitled under the FMLA and Defendant's policies as a result of his chronic serious health conditions.

62.     All of the time Plaintiff was required to be off work when he was attending doctors' appointments, receiving treatment, or recuperating from his conditions, were FMLA-qualifying.

63.     Defendant was aware of all of the times Plaintiff was off by virtue of his serious health conditions. Penny Mathias also acknowledged Plaintiff's disability, and thus his serious health condition, in his file with Defendant on March 12, 2019.

14

64.    Defendant regularly allowed other employees to take off short periods of leave for other health conditions, such as colds or the flu, or for inexcusable reasons, and did not use such absences or tardiness against those employees.

65.    Defendant used Plaintiff's required leave, which was FMLA qualifying, and Plaintiff's possible future need for leave in relation to his serious health conditions, as negative factors in employment decisions relating to him, including in the decision to terminate his employment or to allow reasonable accommodations.

66.    Defendant interfered with Plaintiff's rights under the FMLA, retaliated, and discriminated against Plaintiff for using FMLA qualifying leave, and terminated Plaintiff's employment with Defendant in violation of 29 U.S.C. §§ 2615(a)(1) and (a)(2), and/or 29 U.S.C. §§ 2615(b).

67.    Defendant's conduct interfered with, restrained, and/or denied the exercise of or attempt to exercise Plaintiff's rights under the FMLA.  Defendant's conduct also was in retaliation for Plaintiff's use of and need to use FMLA qualifying leave.

68.    Defendant's conduct complained of herein was willful and without legal justification.

69.    As a direct and proximate result of the acts and practices of Defendant, and its agents and employees set forth herein, Plaintiff has suffered and continues to suffer injury and damage, including loss of employment and past and future loss and denial of income, including wages, healthcare benefits, and other employment benefits denied or lost.

### COUNT THREE-Violations of the ADA

70.    Plaintiff incorporates by reference and realleges Paragraphs 1 through 51 as if fully set forth here.

71.    The ADA Amendment Act of 2008 (ADAAA) applies to Plaintiff's ADA claims of failure to accommodate and wrongful termination because Defendant's actions

15

took place after the effective date of the ADAAA.  Pub. L. 110-325, § 8, 122 Stat. 3553 (Sept. 25, 2008), codified at 42 U.S.C. § 12101 (Note).  Under the ADAAA, Plaintiff's disability must be assessed without regard to the ameliorative effects of mitigating measures like medical treatments, including hospitalization, surgery, physical therapy and medication. 42 U.S.C. §12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi).

72.    At all relevant times, Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

73.    Plaintiff took periods of intermittent medical leave to which he was entitled under the ADA, the FMLA, and Defendant's own policies beginning in May or June of 2018 and through March 19, 2019 due to his disabilities, which posed no undue burden to Defendant.  He also requested reasonable accommodations for his abilities, and then provide Defendant with his doctor's note requiring appropriate accommodations within two weeks before he was terminated from his employment.  Plaintiff's requests for accommodations of his conditions were reasonable.

74.    Defendant was aware of Plaintiff's disabilities and need for periods of leave, and for reasonable accommodations in relation to his disabilities.

Among other things, Defendant:

a.    terminated Plaintiff's employment based upon Plaintiff's disabilities, whether actual, through the record of Plaintiff's substantially limiting impairments, or Defendant having regarded Plaintiff as having such impairments;

b.    failed and/or refused to make and implement reasonable accommodations with respect to Plaintiff's disabilities, including a short period and/or short periods of medical leave (to which Plaintiff was entitled under the FMLA, the ADA, and Defendant's own leave policies), as well as his request for accommodation to be allowed to use the bathroom near his work station and not have to walk so far to access the building and the parking lot, and these failures and refusals were not in good faith;

16

c.      terminated Plaintiff's employment on March 21, 2019 based on the need to make reasonable accommodations because of Plaintiff's disability;

d.      terminated Plaintiff's employment based on the need or perceived need to make reasonable accommodations in the future for Plaintiff's disability;

e.      used Plaintiff's disability, whether actual or through a perception of disability and/or his record of having a substantial impairment of major life activities, as negative factors in consideration of his job performance and anticipated future performance;

f.      failed to engage and/or continue to engage in the interactive process with Plaintiff and his healthcare providers to determine the extent and nature of the necessary reasonable accommodations for Plaintiff's disability; and

g.      otherwise discriminated against Plaintiff based upon disability under the ADA.

75.     The reasons for the termination of Plaintiff's employment were discriminatory and based on Plaintiff's disability.

76.     Plaintiff was and is qualified for the job he was performing in the sprocket department because he satisfies the skill, experience and other job-related requirements for the position as well as other positions at Defendant.

77.     At all relevant times, Plaintiff was able to perform the essential functions of the position he was occupying with or without reasonable accommodation.

78.     Defendant's intentional discrimination was with respect to terms, conditions, and privileges of Plaintiff's employment, caused Plaintiff damage during his employment, and resulted in the termination of his employment with Defendant because of disability.

79.     As a consequence of Defendant's intentional discrimination based on disability, Plaintiff has suffered, continues to suffer, and will in the future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to

17

reputation, and loss of enjoyment of life.

80.   Defendant engaged in the practices complained of with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA entitling him to the recovery of punitive damages.

81.   As a consequence of Defendant's actions, Plaintiff has lost wages and other financial incidents and benefits of employment, and Plaintiff will continue to suffer such losses.

82.   As a consequence of the acts and omissions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other litigation expenses.

COUNT FOUR - Violations of the ADA-Retaliation

83.   Plaintiff incorporates by reference and realleges Paragraphs 1 through 51 and 70 through 82 as if fully set forth here.

84.   Pursuant to 42 U.S.C. § 12203(a), Defendant discriminated and retaliated against Plaintiff through the termination of his employment because Plaintiff used leave to which he was entitled under the ADA, and/or exercised rights to a reasonable accommodation, which consisted of brief periods of medical leave under the ADA and access to bathroom facilities and doors to the parking lot that were closer to his work station.

85.   As a consequence of Defendant's violations of the ADA, including its discriminatory and retaliatory conduct, Plaintiff has suffered great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, and loss of enjoyment of life.

86.   As a consequence of Defendant's actions, Plaintiff has lost employment, wages and other financial incidents and benefits of employment.

87.   As a consequence of the acts and omissions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff James Montgomery demands judgment against Defendant Ashworth Bros., Inc. as follows:

18

(a)     For a declaration that the acts and practices complained of herein are in violation of Plaintiff's rights as secured by Va. Code Ann. § 40.1-51.2:1, *et seq.,* 29 U.S.C. § 2601, *et seq.,* the Family and Medical Leave Act of 1993, and/or the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.;*

(b)     For an order requiring Defendant Ashworth Bros., Inc. to reinstate Plaintiff to his position in the sprocket department, or a position with comparable duties and responsibilities and with equal pay and benefits as Plaintiff would have received but for Defendant's conduct in violation of Virginia health and safety laws, the FMLA and/or the ADA, and reinstating all benefits to which Plaintiff would have been entitled but for the illegal termination of his employment, or in the alternative if such award is infeasible, for an award of front pay and future benefits against Defendant under Virginia law, the ADA and/or the FMLA;

(c)     For a permanent injunction enjoining Defendant Ashworth Bros., Inc. from any conduct violating Plaintiff's rights as secured by Va. Code Ann. § 40.1-51.2:2, the FMLA and/or the ADA;

(d)     For an award against Defendant Ashworth Bros., Inc. for back pay, prejudgment interest at 8% per annum, and appropriate recovery for lost employment benefits and other affirmative relief as may be appropriate Va. Code Ann. § 40.1-51.2:1, and for all other wages and benefits denied or lost under the FMLA, in an amount of $150,000;

(e)     For an award against Defendant Ashworth Bros., Inc. of liquidated damages pursuant to 29 U.S.C. § 2617 in the amount of $150,000;

(f)     For an award against Defendant Ashworth Bros., Inc. for compensatory damages under Virginia law and/or the ADA in an amount of $150,000;

(g)     For an award against Defendant Ashworth Bros., Inc. for attorneys' fees and costs incurred in this action, together with expert witness fees and expenses pursuant to Virginia law, the FMLA and/or the ADA;

(h)    For an award against Defendant Ashworth Bros., Inc. in an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

(i)    For an award of $150,000 as punitive damages under the ADA;

(j)    For an award against Defendant Ashworth Bros., Inc. of pre- and post-judgment interest on any monetary award under the FMLA and under the ADA; and

(k)    For any other relief this Court deems to be just and proper.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES SO TRIABLE.**

JAMES MONTGOMERY

By: _____
                Counsel

Timothy E. Cupp, VSB No. 23017
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
P.O. Box 589
Harrisonburg, Virginia 22803-0589
Phone: (540) 432-9988
Fax: (804) 278-9634
E-mail: cupp@scs-work.com

Tim Schulte, VSB No. 41881
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Virginia 23220
Phone: (804) 644-9700
Fax: (804) 278-9634
Email: schulte@scs-work.com
*Counsel for Plaintiff*

```
VALIDATE USER PAPERS
RCPT : 200000Y904
DATE : 10/19/2020 TIME: 14:20
CASE : 840CL25000614-00
ACCT : MONTGOMERY, JAMES
AMT  : $361.00
```



# *COMMONWEALTH of VIRGINIA*
**DEPARTMENT OF LABOR AND INDUSTRY**

**C. Ray Davenport**
COMMISSIONER

Main Street Centre
600 East Main Street, Suite 207
Richmond, Virginia 23219
PHONE (804) 371-2327
FAX (804) 371-6524

September 8, 2020

**UPS DELIVERY**

James Montgomery
13637 Lord Fairfax Highway
Boyce, VA   22620

Tim Cupp
[Counsel for Complainant]
Shelley, Cupp Schulte, PC
1951-D Evelyn Byrd Ave
Harrisonburg, VA   22803

Bennie Moretti
President
Ashworth Bros., Inc.
450 Armour Dale Street
Winchester, VA   22601

Cathleen P. Welsh
[Counsel for Respondent]
Flora Pettit PC
90 North Main Street, Suite 201
Harrisonburg, VA   22803

**SUBJECT: Whistleblower Complaint Filed by James Montgomery**
**Ashworth Bros., Inc.**
**Number 2019-027**

Dear Mr. Montgomery:

This letter is to inform you that your complaint of discrimination under Virginia Code 40.1-51.2:1 is hereby dismissed.  Please be aware you have the right under Virginia Code 40.1-51.2:2.B to bring an action in Circuit Court against your employer for appropriate relief (copy attached). The Department is not directly involved in the court procedure, if you choose to elect it.

Sincerely,

Jay Withrow, Director
Division of Legal Support, ORA, OPPPI, and OWP

**EXHIBIT**
1

## Virginia Department of Labor and Industry

Virginia Occupational Safety and Health (VOSH) Program

Office of Whistleblower Protections

### Applicable Virginia Code Sections:

### § 40.1-51.2:1. Discrimination against employee for exercising rights prohibited.

No person shall discharge or in any way discriminate against an employee because the employee has filed a safety or health complaint or has testified or otherwise acted to exercise rights under the safety and health provisions of this title for themselves or others.

### § 40.1-51.2:2. Remedy for discrimination.

A. Any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of § 40.1-51.2:1 may, within 60 days after such violation occurs, file a complaint with the Commissioner alleging such discharge or discrimination. The employee shall be prohibited from seeking relief under this section if he fails to file such complaint within the 60-day time period. Upon receipt of such complaint, the Commissioner shall cause such investigation to be made as he deems appropriate. If, upon such investigation, he determines that the provisions of § 40.1-51.2:1 have been violated, he shall attempt by conciliation to have the violation abated without economic loss to the employee. In the event a voluntary agreement cannot be obtained, the Commissioner shall bring an action in a circuit court having jurisdiction over the person charged with the violation. The court shall have jurisdiction, for cause shown, to restrain violations and order appropriate relief, including rehiring or reinstatement of the employee to his former position with back pay plus interest at a rate not to exceed eight percent per annum.

B. Should the Commissioner, based on the results of his investigation of the complaint, refuse to issue a charge against the person that allegedly discriminated against the employee, the employee may bring action in a circuit court having jurisdiction over the person allegedly discriminating against the employee, for appropriate relief.

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>X EEOC | 438-2020-00449 |

Office of the Attorney General, Division of Human Rights and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | | HOME TELEPHONE *(Include Are Code)* |
|---|---|---|
| Mr. James Montgomery | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| | Boyce, Virginia 22620 | /1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Ashworth Bros., Inc. | 200+ | 540-662-3494 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 450 Armour Dale | Winchester, Virginia 22601 | City of Winchester |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

X RETALIATION ☐ AGE X DISABILITY X OTHER *(Specify)* Hostile work environment

DATE DISCRIMINATION TOOK PLACE
EARLIEST: March 6, 2019
LATEST: March 21, 2019
X CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

1. I am a white male, 60 years of age. I began working at Ashworth Bros., Inc. in Winchester, Virginia in 1988. I worked my way up to a lead person position which I occupied for years up until shortly before I was illegally terminated. During my employment, and through the time that my employment was illegally terminated on March 21, 2019 for the discriminatory and/or retaliatory reasons described in this Charge, I performed my job well and met my employer's legitimate expectations.

2. I suffer from several chronic serious health conditions, which are physical impairments that substantially limit my major life activities, including walking, stooping, standing, bending, crawling, kneeling and my musculoskeletal system and immune system, among other things, and constitute disabilities under the ADA. I suffer from arthritis and rheumatoid arthritis, chronic pain (including low back pain) and have had hip replacement surgery (both hips), as well as knee replacement surgery and other surgeries. I walk with a distinctive and noticeable limp. Ashworth Bros., Inc. was aware of my conditions. I have a record of such physical impairments, and Ashworth Bros., Inc. regarded me as being so impaired.

3. In May or June of 2018, I was approved for intermittent leave under the Family and Medical Leave Act due to my health conditions, which caused multiple joint pain and limited range of motion with joint and muscle tenderness. I was referred to physical therapy by my doctor. Despite my conditions, I continued to perform my job well and was able to use available accumulated leave for days I was required to be off work due to my health conditions and disabilities.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>12-30-19<br>Date    Charging Party (Signature) | NOTARY – (When necessary for State and Local Requirements)<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, Month, and Year) |

**EXHIBIT**
2

*Continued from the previous page*

4. My chronic serious health conditions and need for leave did not require me to miss significant amounts of time in early 2019, and I always kept my employer aware of my conditions and need for leave.

5. In early March 2019, I developed increasing numbness and tingling in my arm radiating to my hand. I told Judy Mills, human resources representative, about my symptoms and my need for a doctor's appointment. My doctor referred me for a nerve conduction test, which was scheduled for April 2019. I subsequently was diagnosed with carpal tunnel syndrome. Also in early March 2019, Ashworth Bros., Inc. had locked the bathroom located in close proximity to my work station, which caused me to have to walk a great distance to use the facilities. It also closed off access through a door near the employee parking lot, requiring another long walk at the beginning and end of the day. These distances made it very difficult for me given my significant hip, knee and back pain. I requested that I be allowed to use the bathroom and the door close to my workstation, to no avail.

6. On March 11, 2019, my primary care doctor gave me a note which I presented to Ashworth Bros., Inc. My doctor restricted me to limited walking, and imposed lifting and carrying restrictions as reasonable accommodation for my disabilities. I remained able to perform the essential functions of my job even with these restrictions. I provided these restrictions to Ashworth Bros., Inc., but the company refused to open the bathroom close to my workstation, even though the only reason it had been closed was that it often was dirty. I have learned that shortly after my employment was terminated, the bathroom was reopened for use by the workforce. Ashworth Bros. did allow access to and from the parking lot through the door near that lot, but only after I noted that I knew a female employee was being allowed to use that door.

7. As an employee of Ashworth Bros., Inc., I was a participant in the Ashworth International, Inc. Employee Stock Ownership Plan (ESOP). I thus became a beneficial owner of interests in Ashworth International, Inc. due to my participation in the ESOP. Ashworth Bros. periodically held informational meetings at which company managers gave information about the status of the company to the "Beneficial Owners" under the ESOP. These meetings were called Beneficial Owners Meetings. Beneficial Owners were allowed to ask questions after the management made its presentation at these meetings.

8. On March 19, 2019, I attended one of the Beneficial Owners meetings. After the management presentation was over, the company president opened the floor for questions and concerns. I was one of the employees who spoke. I addressed safety issues at the plant and questioned the increasing number of injuries at the plant as I was allowed to do. I conducted myself in a professional manner at all times.

9. Later that day, I was summarily suspended from my job. On March 21, 2019, I was called on the telephone by the Ashworth Bros. human resources representative and terminated from my job.

9. The reasons given for the suspension and termination were false and pretextual.

11. Throughout my more than 30 years of employment with Ashworth Bros., Inc., I have had only good performance reviews, with no write-ups, performance improvement plans, or any type of warnings or demerits about my performance until the last minute. My most recent review put me at 97% which is a very good review for the company to give.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date 12-30-19   Charging Party *(Signature)*

SIGNATURE OF COMPLAINANT

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

NOTARY – (When necessary for State and Local Requirements)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, Month, and Year)

*Continued from the previous page*

12. I believe that, in violation of the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §
12101, *et seq.,* my employer intentionally discriminated against me in the terms, conditions, and privileges
of my employment, subjected me to a hostile work environment, suspended me from my job, and
terminated my employment, all on the basis of disability. I believe that my employer failed to provide
reasonable accommodations for my disabilities, failed to engage in the interactive process and/or
prematurely ended the interactive process, and/or discriminated against me because it perceived that it
would need to reasonably accommodate me in the future, resulting in discharge based on disability. I also
believe that my rights were interfered with and that I was retaliated against in violation of the ADA for
having engaged in conduct protected by the ADA. I believe that Ashworth Bros., Inc.'s ADA violations
were willful and intentional, and that it cannot establish good faith necessary to avoid the imposition of
punitive damages under the ADA. I also have asserted a claim for discharge in violation of Va. Code Ann.
§ 40.1-51.2:1 which is pending before the Virginia Dept. of Labor and Industry/Virginia Occupational
Safety & Health. The wrongful and retaliatory discharge portion of the ADA claims asserted here are in
the alternative to the VDOLI/VOSH claim. In addition, I believe that the conduct by Ashworth Bros., Inc.
violated my rights under Virginia law, including the Virginia Human Rights Act, § 2.2-3900, *et seq.*, Code
of Virginia of 1950, as amended, on the basis of disability and/or retaliation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | NOTARY – (When necessary for State and Local Requirements) |
| Date  12-30-19   Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, Month, and Year) |

Case 5:20-cv-00077-TTC-JCH   Document 1-1   Filed 11/05/20   Page 27 of 29   Pageid#: 30

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: James Montgomery 13637 Lord Fairfax Highway Boyce, VA 22620 | From: Washington Field Office 131 M Street, N.E. Suite 4NW02F Washington, DC 20507 |
|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 438-2020-00449 | **Candice Rogers, Investigator** | **(202) 419-0798** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

For  **Richard Kim**  Digitally signed by Richard Kim
DN: cn=Richard Kim, o=EEOC, ou=Enforcement, email=richard.kim@eeoc.gov, c=US
Date: 2020.07.21 13:06:41 -04'00'                                July 21, 2020

Enclosures(s)                                                        *(Date Mailed)*

**Mindy E. Weinstein,
Acting Director**

cc:  Cathleen P. Welsh, Esq.
Flora Pettit PC
PO Box 1287
Harrisonburg, VA 22803



Timothy E. Cupp, Esq.
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg, VA 22803

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.